# In the United States Court of Federal Claims

No. 18-111L
Filed: January 31, 2022

|  |  |
|---|---|
| CHESHIRE HUNT, INC., et al., | ) |
|  | ) |
|  | ) |
| *Plaintiffs*, | ) |
|  | ) |
| v. | ) |
|  | ) |
| THE UNITED STATES, | ) |
|  | ) |
| *Defendant*. | ) |
|  | ) |

*Mark F. Hearne, II*, True North Law, LLC, St. Louis, Mo., for Plaintiff.  Stephen S. Davis, *of counsel*.

*Zachary T. West*, Trial Attorney, Natural Resources Section, Environment and Natural Resources Division, United States Department of Justice for the United States, with whom was Paul E. Salamanca, Acting Assistant Attorney General, Environment and Natural Resources Division.

## OPINION AND ORDER

**MEYERS, Judge**.

When the Government exercises its authority under the National Trails System Act ("Trails Act"), 16 U.S.C. § 1247(d), to allow the conversion of a railway easement to a recreational trail, it prevents the abandonment of the railway from extinguishing the easement and takes the property owner's reversion interest in the property.  Because the Government takes some portion of the landowner's property interest when it prevents the reversion of the easement to the landowner, the Government must pay just compensation.  Here, the Government argues that its taking was narrow and does not prevent the Plaintiffs from maintaining their previously existing encroachments into the railway corridor so long as those encroachments do not interfere with potential reactivation of rail use or interim trail use.  Therefore, the Government argues that it is not liable for the value of the encroaching betterments in this case.  Because neither party's all-or-nothing view of the law is correct and there is nothing in the record indicating that the Plaintiffs' encroachments do not interfere with trail use, the Government's motion fails.  As a result, the Court denies the Government's motion for partial summary judgment.

## I.      Background

### A.      The Honore Deed.

In 1900, much of what is now Sarasota County, Florida was owned by Bertha Palmer and her family members. ECF No. 14 ¶ 3.[1]   Among Ms. Palmer's relatives owning this property was her brother, Adrian Honore.  *Id*.  Palmer and Honore actively sought to promote and bring prosperity to Sarasota and Venice, Florida.  *Id*. ¶¶ 3-4.  To help the Venice area, Palmer and Honore promoted the creation of a rail line between Sarasota, Florida, where existing railways ended, to Venice, Florida, which was about 15 miles south of the existing terminus of Seaboard Air Line Railway (the "Railroad"[2]) line.  *Id*.

In 1910, Mr. Adrian Honore executed a deed transferring "a right of way for railroad purposes over and across" land in Sarasota County, Florida.[3]  ECF No. 14-1 at 1.  The Honore deed provides that in the event the Railroad ever "abandon[s]" the easement—*i.e.*, ceases using the land "for railroad purposes"—the "land shall <u>ipso facto</u> revert to and again become the property of the undersigned, his heirs, administrators and assigns." *Id*. at 3 (emphasis in original).  This deed has come before the Court before and Judge Williams held that the Honore deed created an easement for railway use and Mr. Honore (and his successors and assigns) "retained fee title to the underlying land encumbered by the easement." *Rogers v. United States*, 90 Fed. Cl. 418, 431 (2009).

## B.    The Trails Act Amendments of 1983.

America's rail system peaked at 272,000 miles. *Preseault v. I.C.C.*, 494 U.S. 1, 5 (1990). By 1990, "only about 141,000 miles [were] in use," and that number was projected to fall by about 3,000 miles per year through the end of the twentieth century. *Id*.  Prior to 1983, the Government sought to convert railway rights-of-way to recreational trails after abandonment but found this approach failed because many of the easements reverted to the landowners upon the cessation of railroad use.  *See id*. at 6.  As a result, there was no interest left to convert to a recreational trail.

In 1983, Congress amended the Trails Act to add Section 8(d), which "provides that interim trail use 'shall not be treated, for any purposes of any law or rule of law, as an abandonment of the use of such rights-of-way for railroad purposes.'"  *Id*. at 8 (quoting 16 U.S.C. § 1247(d)).  "By deeming interim trail use to be like discontinuance rather than abandonment, Congress prevented property interests from reverting under state law[.]" *Id*.

---

[1] Plaintiffs' Second Amended Complaint starts with paragraphs numbered 1-28, then has paragraphs numbered 1-75, then paragraphs numbered 1 and 2, then paragraphs numbered 1-22. ECF No. 14.  Several more paragraphs are not numbered at all.  To avoid confusion, the Court refers to the first set of numbered paragraphs—*i.e.*, paragraphs numbered 1-28 appearing on ECF pages 4-12—unless otherwise indicated.

[2] Seaboard fell upon hard times and its interest in the Honore easement has transferred several times to other rail operators.  Because there is no distinction between Seaboard and its successors that is relevant to the resolution of this motion, the Court refers simply to the "Railroad."

[3] At the time of the deed, what is now Sarasota County was part of Manatee County, Florida. While the deed refers to the property being in Manatee County, the Court refers to the property as being in Sarasota County because that is how the remaining documents—*e.g.*, the NITU— refer to the property.

(internal citation omitted).  This gave the Government a chance to convert rights-of-way to trail use before the property could revert to the servient landowners.  This also gives rise to the taking in rails-to-trails cases.

### C.      The application for abandonment and the NITU.

For many years the Railroad operated a rail line across the Honore easement.  But the last commercial traffic over the line was in 2002.  ECF No. 14 ¶ 9.  As a result, the railroad petitioned the Surface Transportation Board ("STB" or the "Board") for authorization to abandon several sections of the Sarasota-Venice railroad.  *Id*. ¶¶ 10-18.  In 2017, the Railroad petitioned to abandon the 1.71-mile segment of the rail line at issue in this case.  *Id*. ¶ 11.  After Sarasota County agreed to serve as trail operator, the STB issued a Notice of Interim Trail Use ("NITU") on December 5, 2017.  *Id*. ¶ 17; *see also* ECF No. 14-1 at 107-11 (Ex. 10).  The NITU covers a 1.71-mile segment of the Venice Branch railway line "between milepost SW 890.29 and milepost SW 892.00 outside of the City of Sarasota, in Sarasota County, Fla."  ECF No. 14-1 at 107.  The right-of-way extends 50 feet from the centerline of the tracks, making a roughly 100-foot-wide corridor.  *Id*. at 114 (Ex. 11) ("Site Boundary 50' ± From Centerline of Nearest Track (CSX Corridor 100' Wide)").  The NITU allowed the Railroad to discontinue service while preventing the right-of-way from reverting to the Plaintiffs pursuant to the Honore deed.

Following the NITU, the Railroad negotiated a trail use agreement with Sarasota County, Florida, in which the County agreed to serve as the trail operator.  *See id.* at 112.  As the trail operator, Sarasota County has dispatched sheriff's deputies to remove people from the right-of-way and ordered Plaintiffs and others to remove improvements that encroach on the easement.  ECF No. 140 at 2.  The Government, however, insists that it did nothing to authorize Sarasota County to demand the removal of encroachments, thereby passing the liability for their value to the county.  *See* ECF No. 139 at 6.  Sarasota County denies liability in separate litigation in Florida.  ECF No. 140 at 10 n.18.  Plaintiffs are left without their property and two sovereigns pointing the finger at each other as the one responsible for the takings.

### D.      The encroachments.

The primary issue before the Court is who is liable for ordering the Plaintiffs to remove encroaching improvements from the right-of-way.[4]  According to the Government, "[t]hese encroachments include fences, storage containers, portions of buildings, concrete pads, and telecommunication towers, among others."  ECF No. 120 at 1.  The record provides a more detailed explanation of the easements as follows:

- Argos Ready Mix's encroachments include a fence.  ECF No. 152-12 at 7.[5]
  Sarasota County describes this encroachment as a fence that is "[a]pproximately

---

[4] While the Parties assert that some of these encroachments have existed for decades, the record does not reflect how these encroachments came into being or what their legal status was at the time of the NITU.

[5] Because ECF No. 152 and its accompanying attachments do not include consistent page numbering, the Court refers to the page numbering in the ECF Header.

encroaching 25.7 ft. at northern boundary."  ECF No. 152-15 at 7 (PID No. 0097050017).

- Charleen R Rosin Revocable Trust's encroachments included a fence.  ECF No. 152-12 at 3.  Sarasota County describes this encroachment as a fence that has been "removed already" and was "[a]pproximately encroaching 1.8 ft."  ECF No. 152-15 at 7 (PID No. 0090010003).

- Ducks in a Row Enterprises, LLC's encroachments include "a portion of [an] outbuilding, fence, parking lot, chain link fence, and bollards."  ECF No. 152-12 at 4.  Sarasota County describes this encroachment as: "Fence - 16.5 ft. at northern boundary and 19.7 ft. at southern boundary; Concrete Building - 5.7 ft. at northern corner and 11.5 ft at southern corner; 4 x 8" Bollards; Concrete Asphalt by Bollards - 11.9 ft." and also indicates that there is an "antenna tower" as well.  ECF No. 152-15 at 7 (PID No. 0090010002).

- Group W Property's encroachments include a "metal storage building, storage yard and fence."  ECF No. 152-12 at 8 (PID No. 0097120005).

## II.     Pending motions regarding supplemental authority and evidence.

Before turning to the merits of the Government's motion, the Court addresses other pending motions.  Since the Court heard argument on the Government's motion, the Plaintiffs have filed several notices of supplemental authority and motions to file supplemental evidence.  *See* ECF Nos. 133, 146, and 152.  The most recent is a motion to file additional evidence regarding the Government's motion that Plaintiffs filed on October 17, 2021.  These two motions, ECF Nos. 146 and 152 are granted.

## III.    The Government's motion for partial summary judgment.

For the purposes of this motion, the Government does not dispute that the Honore deed created an easement limited to railroad use and the underlying land would have reverted to landowners upon the abandonment of railroad use if the Government had not invoked the Trails Act.  According to the Government, "[t]he parties agree that under Florida law, the railroad originally acquired only an easement for railroad purposes in the segments of the corridor adjacent to the True North Plaintiffs' property, and that Plaintiffs own the fee underlying the corridor to the centerline."  ECF No. 120 at 1; *see also* Hearing Tr. at 7:25-8:8 (ECF No. 145).  The issue before the Court is the scope of the Government's taking.

### A.    Standard of Review

Under Rule 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Rules of the Court of Federal Claims ("RCFC") 56(a).  The initial burden on the movant is to show that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  If the movant does so, the burden shifts to the nonmovant to show the existence of a genuine dispute of a material fact, which can be achieved by "citing to particular parts of

materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." RCFC 56(c)(1). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). A "genuine" dispute of material fact exists where a reasonable factfinder "could return a verdict for the nonmoving party." *Id*. at 248. "Material" facts are those "that might affect the outcome of the suit under the governing law," as opposed to "disputes that are irrelevant or unnecessary." *Id*.

"The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. Therefore, "[a]ny doubt over factual issues must be resolved in favor of the party opposing summary judgment, to whom the benefit of all presumptions and inferences runs." *BES Design/Build, LLC v. United States*, No. 19-1892C, 2021 WL 5621326, at *24 (Fed. Cl. Nov. 30, 2021) (citations omitted). But "a nonmovant is required to provide opposing evidence under Rule 56(e) only if the moving party has provided evidence sufficient, if unopposed, to prevail as a matter of law." *Id*. at *25 (quoting *Saab Cars USA, Inc. v. United States*, 434 F.3d 1359, 1369 (Fed. Cir. 2006)).

**B.      Neither Party's extreme view of the easement is correct.**

According to the Government, the Trails Act calls for the easement to be the least costly to the Federal Government. *See* ECF No. 120 at 3. As a result, the Government insists that a Trails Act easement for recreational trail use must be non-exclusive for the trail operator and the Government is not liable for taking the Plaintiffs' right to maintain their encroachments. *Id*. The Plaintiffs contend that "the Board's invocation of section 8(d) is a complete taking of the landowners' state-law right to use and possess the land and takes essentially the entirety of the owners' state-law right to their property." ECF No. 130 at 29. Alternatively, Plaintiffs contend that the easement grants the trail operator the exclusive use of the property. *Id.* at 32-34. Neither extreme is correct.

1.      The Trails Act neither mandates nor prohibits exclusive easements.

The Government argues that the Trails Act's "plain language does not mandate the creation of exclusive easements for trail use." ECF No. 120 at 9. That may well be so, but the plain language also does nothing to prohibit exclusive use easements. The Court begins, as it must, with the text of the Trails Act. *E.g.*, *Caraco Pharm. Lab'ys, Ltd. v. Novo Nordisk A/S*, 566 U.S. 399, 412 (2012) ("We begin 'where all such inquiries must begin: with the language of the statute itself.'") (quoting *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989)); *Barela v. Shinseki*, 584 F.3d 1379, 1382-83 (Fed. Cir. 2009) ("Statutory interpretation starts with the plain language of the statute.") (citation omitted). The Trails Act provides:

> The Secretary of Transportation, the Chairman of the Surface
> Transportation Board, and the Secretary of the Interior, in
> administering the Railroad Revitalization and Regulatory Reform
> Act of 1976 . . . shall encourage State and local agencies and

private interests to establish appropriate trails using the provisions of such programs.  Consistent with the purposes of that Act, and in furtherance of the national policy to preserve established railroad rights-of-way for future reactivation of rail service, to protect rail transportation corridors, and to encourage energy efficient transportation use, in the case of interim use of any established railroad rights-of-way pursuant to donation, transfer, lease, sale, or otherwise in a manner consistent with this chapter, if such interim use is subject to restoration or reconstruction for railroad purposes, such interim use shall not be treated, for purposes of any law or rule of law, as an abandonment of the use of such rights-of-way for railroad purposes.  If a State, political subdivision, or qualified private organization is prepared to assume full responsibility for management of such rights-of-way and for any legal liability arising out of such transfer or use, and for the payment of any and all taxes that may be levied or assessed against such rights-of-way, then the Board shall impose such terms and conditions as a requirement of any transfer or conveyance for interim use in a manner consistent with this chapter, and shall not permit abandonment or discontinuance inconsistent or disruptive of such use.

16 U.S.C. § 1247(d).

The Government reads this provision and finds its "express, narrow purpose is to 'preserve established railroad rights-of-way for future reactivation of rail service.'"  ECF No. 120 at 10 (quoting 16 U.S.C. § 1247(d)).  Therefore, the Government argues that the Court should construe Section 1247(d) "to create the least burdensome interest necessary to achieve its stated purpose . . . ."  *Id*.  For their part, Plaintiffs counter that Congress unequivocally authorized the taking of their property for two purposes: (1) to preserve railroad corridors for potential reactivation; and (2) to expand public recreation.  ECF No. 130 at 16, 32-33.  The Plaintiffs are correct.

The assertion that Section 1247(d)'s only purpose is to preserve railroad rights-of-way is belied by the text of the statute and Supreme Court precedent.  The very first sentence of Section 1247(d) directs various cabinet secretaries to "encourage State and local agencies and private interests *to establish appropriate trails*."  16 U.S.C. § 1247(d) (emphasis added).  The Supreme Court held that Congress's 1983 amendments to the Trails Act, which added Section 1247(d), represented "the culmination of congressional efforts to preserve shrinking rail trackage *by converting unused rights-of-way to recreational trails*."  *Preseault*, 494 U.S. at 5 (emphasis added).  And the Supreme Court found that "'*[t]wo* congressional purposes are evident" in the Trails Act.  *Id.* at 17 (emphasis added).  The first of these purposes was to "'encourage the development of additional trails' and to 'assist recreation[al] users by providing opportunities for trail use on an interim basis.'"  *Id*. at 17-18 (first quoting H.R.Rep., at 8, 9; S.Rep., at 9, 10 (same), U.S. Code Cong. & Admin. News 1983, p. 119; and then citing 16 U.S.C. § 1241(a) which states that the Trails Act "promote[s] the preservation of, public access to, travel within, and enjoyment and appreciation of the open-air, outdoor areas and historic resources of the

Nation").  The second purpose was "to preserve established railroad rights-of-way for future reactivation of rail service, to protect rail transportation corridors, and to encourage energy efficient transportation use." *Id*. at 18 (quoting H.R.Rep., at 8; S.Rep., at 9, U.S. Code Cong. & Admin. News 1983, p. 119) (citation omitted).

Despite the clarity of the Trails Act, the Government argues that the legislative history shows that Congress did not intend to have the trail use easements be exclusive for the trial operator.  ECF No. 120 at 14-15.  Here too the Plaintiffs respond that Congress intended to take their state-law right to use and possess their property in its entirety.  ECF No. 130 at 29-33.  As an initial matter, this Court does not believe there is any reason to resort to legislative history in this case because the Trails Act is unambiguous.  That said, the Supreme Court has addressed the history of the Trails Act, and specifically Section 8(d) added by the 1983 amendments.  But even if it were proper to review the Trails Act's legislative history, it would not help the Government.

The Government relies most on the Supreme Court's statement in *Preseault* that "[t]here is no doubt that Congress meant to keep the costs of the [1983] Amendments to a minimum." ECF No. 120 at 5 (some alterations in original) (quoting *Preseault*, 494 U.S. at 14).  From this statement, the Government contends that Congress "did not intend Section 8(d) to impose costly exclusive easements."  *Id*. at 14; *see also id*. at 15 ("The legislative record conflicts with the suggestion that Congress intended to impose exclusive easements and exclude servient estate owners from their land.").  But the Supreme Court's opinion in *Preseault* does not support the Government's argument.  The Supreme Court concluded that the legislative history indicated that Congress chose a less expensive alternative than federal acquisition of all abandoned rights-of-way.  According to the Court:

> The statements made in Congress during the passage of the Trails Act Amendments might reflect merely the decision not to create a program of direct federal purchase, construction, and maintenance of trails, and instead to allow state and local governments and private groups to establish and manage trails.  The alternative chosen by Congress is less costly than a program of direct federal trail acquisition because, under any view of takings law, only some rail-to-trail conversions will amount to takings.  Some rights-of-way are held in fee simple.  Others are held as easements that do not even as a matter of state law revert upon interim use as nature trails.  In addition, under § 8(d) the Federal Government neither incurs the costs of constructing and maintaining the trails nor assumes legal liability for the transfer or use of the right-of-way. In contrast, the costs of acquiring and administering national scenic and national historic trails are borne directly by the Federal Government.  Thus, the "low cost" language might reflect Congress' rejection of a more ambitious program of federally owned and managed trails, rather than withdrawal of a Tucker Act remedy.

*Preseault*, 494 U.S. at 15-16 (footnotes and internal citations omitted).  Nothing in the history or Supreme Court precedent dictates the conclusion that Congress did not authorize the taking of an exclusive easement.

According to the Government, "[t]his Court should afford substantial deference to the United States' position."  ECF No. 120 at 15.  The Government doesn't specify what type of deference it claims to be entitled to, but argues this deference is due under *United States v. Carmack*, 329 U.S. 230 (1946).  ECF No. 120 at 15.  According to *Carmack*, "[t]he power of eminent domain is vested in the sovereign, which has broad discretion to decide how to employ that power."  *Id.* (citing *Carmack*, 329 U.S. at 236).  Plaintiffs respond to the Government based on the understanding that the Government is seeking some form of *Chevron* deference.  *See* ECF No. 130 at 33-34.  It is not clear, however, that the Government is seeking *Chevron* deference in this case because it never cites *Chevron* nor argues for deference like *Chevron* here.  That said, no amount of deference would allow the Court to credit the Government's interpretation of the Trails Act when that interpretation runs counter to Supreme Court precedent as discussed above.

In *Carmack*, the Supreme Court held that the sovereign has broad discretion in how to exercise its eminent domain power.  *See* ECF No. 120 at 15.  *Carmack* addressed whether certain government officials were authorized by Congress to acquire certain land for a post office in Cape Girardeau, Missouri.  *Carmack*, 329 U.S. at 233.  But the discretion discussed in *Carmack* dealt with whether the United States could invoke eminent domain to take property in Cape Girardeau when Congress had not specified the locations that it authorized the Government to take property.  And much of the dispute in *Carmack* involved whether the United States could take Missouri public property—*e.g.*, a courthouse, a local park, city hall, and a public library—and use that property for federal purposes.  *Id.* at 233-34.  No similar issues arise in this case and nothing in *Carmack* supports the notion that the Government is entitled to deference on a question of Fifth Amendment Taking damages.  The Government does not get to put its finger on the scale when it comes to determining just compensation.

Taken together, the statutory text and precedent make clear that Congress sought to preserve railway rights-of-way and promote recreational trails.  While it may be that the preservation of railway rights-of-way is Congress's primary concern, given the requirement that any trail use is subject to reactivation of rail use, the Court must give meaning to the recreational trail use until such time as the rail use resumes.

2.    The Trails Act does not preempt or forbid all uses of Plaintiffs' property.

Plaintiffs argue that the Trails Act "explicitly preempt[s] owners' state-law rights and state-law remedies" and that "[the STB] has declared that state law is preempted beginning with the Board's original invocation of section 8(d) and state law is continually and perpetually preempted thereafter."  ECF No. 130 at 21.  The Government counters that the preemption under the Trails Act is limited to abandonment and matters that interfere with railroad use.  ECF No. 132 at 3-4, 9.

The Plaintiffs' argument is overbroad.  This Court and others have repeatedly rejected the argument that the Trails Act preempts all use of burdened property by the servient landowner.  *E.g.*, *Dana R. Hodges Tr. v. United States*, 111 Fed. Cl. 452, 457 (2013); *Sears v. United States*,

132 Fed. Cl. 6, 26 (2017), *aff'd per curiam*, 726 F. App'x 823 (Fed. Cir. 2018); *see also Franks Inv. Co. LLC v. Union Pac. R.R. Co.*, 593 F.3d 404, 410-11 & n.2 (5th Cir. 2010) (holding that railroad crossing disputes under state law are only pre-empted if such disputes invoke state laws that if enforced would affect the management or governance of rail transportation); *Adrian & Blissfield R.R. Co. v. Vill. of Blissfield*, 550 F.3d 533, 539-41 (6th Cir. 2008) (holding that state law will be pre-empted if it serves to prevent the railroad from carrying out its operations); *New York Susquehanna & W. Ry. Corp. v. Jackson*, 500 F.3d 238, 252-54 (3d Cir. 2007) (agreeing "that a state law that affects rail carriage survives preemption if it does not discriminate against rail carriage and does not unreasonably burden rail carriage"); *Florida E. Coast Ry. Co. v. City of W. Palm Beach*, 266 F.3d 1324, 1331 (11th Cir. 2001) (holding that "express pre-emption applies only to state laws 'with respect to *regulation* of rail transportation'") (emphasis in original). Therefore, "[s]tate law claims that do not deal with abandonment issues are not preempted by the Trails Act." *Sears*, 132 Fed. Cl. at 26 (citing *Dana R. Hodges Trust*, 111 Fed. Cl. at 456–57); ECF No. 120-1 at 9 n.2.

The STB has clearly stated that its "regulatory interest is that nothing precludes 'a railroad's right to reassert control over the right-of-way at some future time to revive active rail service.'" ECF No. 120 at 13 (quoting ECF No. 120-1 at 9 n.2). As such, it appears that the STB has no direct interest in the scope of the trail easement beyond ensuring the ability to return to rail use. Further, the STB has stated that "trail use under the Trails Act should not prevent a third party from continuing to use a portion of the rail right-of-way in the same manner it was lawfully used before the interim trail use on the line, so long as that use does not interfere with potential reactivation of rail service." ECF No. 120-1 at 9 n. 2. The Court cannot fully agree with the STB, however, because the Trails Act serves two purposes—*i.e.*, the reactivation of rail use *and* interim trail use. The lawful use of the burdened property under a trail use easement is not necessarily the same as it was under the rail easement because an encroachment that does not interfere with rail use may well interfere with trail use. As the Federal Circuit explained, "it appears beyond cavil that use of these easements for a recreational trail—for walking, hiking, biking, picnicking, frisbee playing, with newly-added tarmac pavement, park benches, occasional billboards, and fences to enclose the trailway—is not the same use made by a railroad, involving tracks, depots, and the running of trains. *The different uses create different burdens*." *Toews v. United States*, 376 F.3d 1371, 1376 (Fed. Cir. 2004) (emphasis added).

The Court is not persuaded by the Plaintiffs' reliance on *Tubbs v. Surface Transportation Board*, 812 F.3d 1141 (8th Cir. 2015), as a "demonstration of the Board's broad assertion of its preemptive authority over state law and state law remedies." ECF No. 130 at 22. In *Tubbs*, the plaintiffs sued on a variety of state law theories that a railroad improperly constructed its rail line, which they alleged caused flooding on their property. 812 F.3d at 1145-46. The Circuit affirmed the preemption of the plaintiffs' claims because "the state-law claims would unreasonably burden or interfere with rail transportation." *Id*. The record here does not support a similar holding. First, the STB has stated that its "regulatory interest is that nothing preclude potential rail reactivation." ECF No. 132 at 6 (citing ECF No. 120-1). Additionally, the Government has explicitly stated that it does not believe the Plaintiffs' encroachments interfere with rail use. Hearing Tr. at 15:16-17 (ECF No. 145) (stating that the encroachments at issue "did not interfere then [when the Railroad was operating] and they would not interfere with rail reactivation now"). Second, although the Court does not have before it the history of how these encroachments came to be or their legal status at the time of the NITU, the Government has

acknowledged that the "encroachments that we're talking about, they were in the corridor for years, and according to Plaintiffs, some cases decades, before rail banking." *Id*. at 15:13-16.  If any of these encroachments interfered with rail use, one could safely assume that the STB or the Court would have heard about it before now.

Similarly, the Court does not find that *Grantwood Village v. Missouri Railroad Co.*, 95 F.3d 654 (8th Cir. 1996), supports the Plaintiffs' view that the Trails Act preempts all state law. *Grantwood Village* involved a quiet title action in which the Eighth Circuit recognized the plaintiff was making "a collateral attack on the ICC's[6] order authorizing interim trail use on the right-of-way." *Id*. at 657.  Thus, the Circuit explained that such a claim was preempted, not that all state laws were.  *See also James v. United States*, 130 Fed. Cl. 707, 734 (2017) (recognizing that *Grantwood Village* addressed a question of abandonment and that such claims were preempted rather than all state law claims).  The same is true of *City of Auburn v. United States*, 154 F.3d 1025 (9th Cir. 1998), which found state laws requiring environmental permitting of rail lines were preempted by federal law.  But these cases do not support the broad notion that the Trails Act preempts the operation of all state laws or prohibits all uses by the servient landowner.

Finally, Plaintiffs rely on *Illig v. United States*, 58 Fed. Cl. 619 (2003), to argue that the Trails Act easement is exclusive.  ECF No. 130 at 35-36.  The Court, however, agrees with the Government that *Illig* does not hold that all Trails Act easements are for exclusive use by the trail operator.  ECF No. 132 at 9-10.  Instead, *Illig* analyzed the statutory and regulatory framework under the Trails Act and persuasively held that the trail easement must be at least coextensive with the rail easement "both in its location and exclusivity."  *Illig*, 58 Fed. Cl. at 631.  But, as the Government points out, *Illig* addressed the exclusivity of rail easements under Missouri law and found them to be exclusive.  As explained below, Florida does presume that rail easements are nonexclusive.

### 3.   Florida law presumes that railroad easements are nonexclusive.

The Parties dispute whether under Florida law a rail use easement is exclusive.  *Compare* ECF No. 120 at 16-21 *with* ECF No. 130 at 16-30.  An exclusive easement is "[a]n easement that the holder has the sole right to use."  *Exclusive easement*, *Black's Law Dictionary* (11th ed. 2019).  In other words, if the easement is exclusive, then the trail operator is the only one that may make any use of the property.

Under Florida law an easement is presumed to be nonexclusive and any intent to grant exclusive use must be explicit.  *See Wiggins v. Lykes Bros., Inc.*, 97 So. 2d 273, 276-77 (Fla. 1957); *Stephens v. Dobbins*, 511 So. 2d 652, 652-53 (Fla. Dist. Ct. App. 1987); *Gelfand v. Mortg. Invs. of Wash.*, 453 So. 2d 897, 898 (Fla. Dist. Ct. App. 1984).  "The general rule of law in Florida is that an instrument creating an easement must be construed as creating a nonexclusive easement unless the instrument clearly shows an intention that the easement is to be exclusive."  *Stephens*, 511 So. 2d at 652-53 (citing *Wiggins*, 97 So. 2d 273; *Gelfand*, 453 So. 2d 897; *Consol. Gas Co. v. City Gas Co. of Fla.*, 447 So. 2d 351 (Fla. Dist. Ct. App.1984)).  In short, "no intention to convey an exclusive easement . . . can be imputed to the grantor of the

---

[6] The authority of the STB over abandonment issues previously belonged to the Interstate Commerce Commission ("ICC").

easement in the absence of a clear indication of such intention. . . ." *Wiggins*, 97 So. 2d at 276-77. There is nothing in the Honore deed that indicates an intent to convey an exclusive easement to the Railroad and the Parties point to nothing.

Plaintiffs instead argue that railway easements are exclusive under Florida law. But Plaintiffs' reliance on *McIlvaine v. Florida East Coast Railway Co*., 568 So. 2d 462, 464 (Fla. Dist. Ct. App. 1990), is misplaced. *See* ECF No. 130 at 35. According to Plaintiffs, McIlvaine holds that "[b]ecause the railroad is held to a high degree of care in transporting goods and people, the carrier is granted what is essentially exclusive possession of its easement.". *Id.* (quoting *McIlvaine*, 568 So. 2d at 464). But in *McIlvaine*, the court of appeals reversed the trial court's holding on exclusivity because it found "no authority is offered to support a railroad's removal of a structure that was in existence at the time the right of way was granted" and thus the "appellant should be allowed to retain the structures located on his land or to require FEC to compensate him for their removal." 568 So. 2d at 466.

The Government's reliance on *Kitzinger v. Gulf Power Co*., 432 So. 2d 188 (Fla. Dist. Ct. App. 1983), is equally misplaced. ECF No. 120 at 18-20. According to the Government, because *Kitzinger* was "a compromise ruling, [where] the court refused to enjoin the [encroaching] house but maintained it was not free of the easement," "this Court should balance Sarasota County's right to use the trail use easement with the servient estate owner's right to enjoy their burdened fee." *Id.* at 18-19. But *Kitzinger* does not support such a conclusion. The Federal Government's authority to take property is not dependent on state law. According to the Supreme Court, "[i]f the United States have the power [of eminent domain], it must be complete in itself. It can neither be enlarged nor diminished by a State. Nor can any State prescribe the manner in which it must be exercised." *Carmack*, 329 U.S. at 238 (quoting *Kohl v. United States*, 91 U.S. 367, 374 (1875)).

Even if the Court relies on *Kitzinger*, it does not support the Government here. In *Kitzinger* the servient landowner built a house that encroached "18.06 feet into a 100-foot wide electrical transmission line easement that Gulf Power" possessed. *Kitzinger*, 432 So. 2d at 189. Gulf Power sued for an injunction ordering the removal of the house even though it was undisputed that the house did not interfere with any past, present, or planned future use of the easement. *Id.* The Court determined that although the encroachment did not interfere with any use of the easement at the time of the litigation and would not be removed, the easement holder's easement was not diminished by the maintenance of the encroachment. *Id.* at 194-95. In other words, if the power company chose to use its easement in a manner that the house interfered with, the power company retained the right to order the encroachment removed. *Id.* at 195. This would support a finding in this case that the easement holder—*i.e.*, the trail operator—maintains the right to order the removal of encroachments if they interfere with trail use even if they did not interfere with rail use.

      4.   The deeds from the Railroad to Sarasota County do not define the scope of the taking in this case.

The Government insists that the Court should look to the deeds that transferred the easement from the Railroad to The Trust for Public Land and then from The Trust for Public Land to Sarasota County to determine the scope of the taking here. ECF No. 132 at 10 (citing

ECF No. 120-3).  For reasons already stated, this analysis is misguided.  The deeds here did not take Plaintiffs' property—the STB did through the NITU.  As Justice Holmes explained, "the question is, What has the owner lost? not, What has the taker gained?"  *Bos. Chamber of Com. v. City of Bos.*, 217 U.S. 189, 195 (1910); *see also Seaboard Air Line Ry. Co. v. United States*, 261 U.S. 299, 304 (1923) ("The compensation to which the owner is entitled is the full and perfect equivalent of the property taken.") (citation omitted).

As the Federal Circuit has often explained, "[i]t is settled law that a Fifth Amendment taking occurs in Rails-to-Trails cases when government action destroys state-defined property rights by converting a railway easement to a recreational trail, if trail use is outside the scope of the original railway easement."  *Ladd v. United States*, 630 F.3d 1015, 1019 (Fed. Cir. 2010) (citation omitted).  Therefore, "[t]he issuance of the NITU is the only *government* action in the railbanking process that operates to prevent abandonment of the corridor and to preclude the vesting of state law reversionary interests in the right-of-way."  *Id.* at 1020 (quoting *Caldwell v. United States*, 391 F.3d 1226, 1233-34 (Fed. Cir. 2004)) (alteration and emphasis in original).[7]  The Circuit reiterated this conclusion recently, holding:

> It is important to identify the nature of the government action at issue.  The NITU in this case, as in similar cases, was a government action that compelled continuation of an easement for a time; it did so intentionally and with specific identification of the land at issue; and it did so solely for the purpose of seeking to arrange, without the landowner's consent, to continue the easement for still longer, indeed indefinitely, by an actual trail conversion.

*Caquelin v. United States*, 959 F.3d 1360, 1367 (Fed. Cir. 2020).

It is important to understand what the easement is in this case.  Like other easements, a right-of-way easement under the Trails Act "burdens 'a particular parcel of land.'"  *United States Forest Serv. v. Cowpasture River Pres. Ass'n*, 140 S.Ct. 1837, 1845 (2020) (quoting J. Bruce & J. Ely, *Law of Easements and Licenses in Land* § 1:1, at 1-6 (2015)).  And "[l]ike all easements, the parcel of land burdened by the easement has particular metes and bounds."  *Id.* at 1846 (citation omitted).  This description of the burdened property is essential because "without such descriptions, parties to an easement agreement would be unable to understand their rights or enforce another party's obligations under the easement agreement.  *Id.*  Here, the NITU provides for the easement over the 100-foot wide (+/-) corridor between Milepost SW 890.29 and

---

[7] The Court recognizes that this formulation of the NITU as the taking is "shorthand" for a larger analysis that applies when "no party has pointed to any legally material difference between the NITU date of issuance (or expiration) and a date of abandonment in the but-for world in which there was no NITU."  *Hardy v. United States*, 965 F.3d 1338, 1349 (Fed. Cir. 2020) (quoting *Caquelin v. United States*, 959 F.3d 1360, 1372 (Fed. Cir. 2020)).  Because the issue here is what defines the scope of the taking rather than its timing, the Court applies the *Ladd-Caldwell* shorthand rather than the larger analysis (*i.e.*, when the railroad would have abandoned in the absence of a NITU).  *See Caquelin*, 959 F.3d at 1372 (concluding "there is no taking until the time as of which, had there been no NITU, the railroad would have abandoned the rail line, causing termination of the easement that the NITU continued by law").

Milepost SW 892.00.  The NITU makes no exception for any encroachments; it authorizes converting the "right-of-way" into a recreational trail without any limitation.  ECF No. 14-1 at 107-111 (Ex. 10).  Deeds between third parties do not define the scope of the easement—the NITU does.  Although the Parties argue that *Palmetto Conservation Foundation v. Smith*, 642 F. Supp. 2d 518 (D.S.C. 2009) addresses the exclusivity of the trail easement, the Court finds it more appropriate when considering the scope of the easement.  In *Palmetto*, the court held that the trail use easement imposed a different use of the property and that "'different uses create different burdens.'"  *Id*. at 530 (quoting *Toews v. United States*, 376 F.3d 1371, 1376-77 (Fed. Cir. 2004)).  The upshot of *Palmetto* is that the new easement entitles the trail operator to use the *entire* easement for trail purposes if it chooses unless some portion of the easement has been ceded back to the servient landowner.  In other words, Palmetto stands for the common sense understanding that an easement holder may use the entirety of the burdened property for the purpose of the easement.  But without knowing the legal status of the encroachments at the time of the NITU, the Court cannot determine *Palmetto*'s application here.

### C.    There is no evidence showing that the Plaintiffs' encroachments do not interfere with trail use.

The Government argues that it is not liable for the value of the encroachments because the easement granting the trail operator the right to use the right-of-way as a recreational trail is nonexclusive.  But the exclusivity issue does not resolve the Government's liability because the question here is whether the Plaintiffs had the right to maintain encroachments that conflicted with the trail operator's right to use its easement.  As the Government itself states, "a servient estate owner can use a rail-trail corridor if they do not materially interfere with potential rail reactivation or public trail use."  ECF No. 132 at 3.  Because there is no evidence that the Plaintiffs' encroachments do not interfere with trail use, summary judgment is not appropriate here.

As discussed above, neither Party argues that the Plaintiffs' encroachments interfere with potential rail reactivation.  Because the encroachments appear to have existed during rail operation without issue, it is hard to see how they could interfere with potential reactivation of rail operations.

That said, there is no evidence that the encroachments do not interfere with trail use.  The Federal Circuit characterized a "NITU as allowing occupation by someone other than the landowner."  *Caquelin*, 959 F.3d at 1367; *see also id*. at 1367-68 (discussing the categorical treatment of rails-to-trails easement because it impairs the right to exclude others).  Rather, it appears that the Plaintiffs interfere with the easement given that they have erected buildings and fenced off sections of the easement.  As the Florida court recognized in *Kitzinger*, "'the erection of permanent structures, such as buildings or walls,' is commonly regarded as 'seriously interfering with the [easement holder's] right of use.'"  *Kitzinger*, 432 So. 2d at 193 (quoting 3 Powell, *The Law of Real Property* ¶ 424 (1981)).  Again, here each of the Plaintiffs has fenced off a section of the easement for their exclusive use.

The Government also argues that the Trails Act "should not empower a trail sponsor to remove an encroachment simply because it extends one foot into a 100-foot-wide corridor."  ECF No. 132 at 9.  As explained above, however, the question is not whether the Trails Act

empowers a trail sponsor, but the scope of the easement that the STB imposed on Plaintiffs.  And as a factual matter, this argument does not appear to apply to anything other than the Charleen R Rosin Revocable Trust's claim, which only encroached 1.8 feet into the easement.  *See supra pp.* 3-4.  Under the Government's theory, it wouldn't appear the same argument would apply to a 28-foot encroachment.  Because the Parties didn't argue this issue with specific reference to the NITU, the Court does not opine at this point.  That said, to the extent Florida law defines the scope of the easement the STB imposed (as explained above it is not clear that it does), Florida courts have found that even minor encroachments are impermissible and enjoined the maintenance of small buildings encroaching on an easement.  *E.g.*, *Kitzinger*, 432 So. 2d at 193.

Finally, the Government's Motion is not helped by its highlighting the fact that "Sarasota County already allows encroachments in the corridor—it just licenses their presence."  ECF 120 at 21 (citing ECF Nos. 74, 78 (denoting the "joint status reports detailing Sarasota County's willingness to license a structure encroaching into the corridor")).  This favorable citation to the trail operator's licensing of encroachments begs the question—if the trail operator has the authority to license encroachments, an authority that must flow from the NITU, does it also have the authority to choose not to license other encroachments?  But without the NITU, the Plaintiffs would be free to use their property unencumbered by any easement and Sarasota County would not have any right as the trail operator to do anything with the easement.

## IV.    Motion to Sever Claims.

Also pending is a motion to sever the claims of non-encroaching landowners—*i.e.*, the Plaintiffs who have no encroachments on the right-of-way at issue—from the Plaintiffs subject to this motion.  While the Parties dispute the propriety of severing claims, the Court believes that this opinion will put the encroaching and non-encroaching Plaintiffs on relatively the same path for the remainder of the matter and severing the claims would be inefficient at this time.  Therefore, the Court denies the motion to sever without prejudice to refile if the proceedings regarding the liability for the encroachments addressed in this opinion will unduly delay the non-encroaching Plaintiffs' claims.

## V.    Conclusion

For the reasons stated above, the Court:

1. **DENIES** the Government's motion for partial summary judgment, ECF No. 120;

2. **GRANTS** the Plaintiffs' motion for leave to file notice of supplemental authority, ECF No. 146;

3. **GRANTS** the Plaintiffs' motion for leave to file additional evidence, ECF No. 152; and

4. **DENIES** without prejudice the Non-encroaching Plaintiffs' motion to sever claims, ECF No. 153.

The Court will schedule a status conference with the Parties during the week of February 21, 2022 to address further proceedings in this matter and setting a schedule for any additional briefing and/or trial in this matter.

IT IS SO ORDERED.

s/ Edward H. Meyers
Edward H. Meyers
Judge