# In the United States Court of Federal Claims

No. 18-111

Filed: September 22, 2023

|  |  |
|---|---|
| CHESHIRE HUNT, *et al.*, | ) ) ) |
| *Plaintiff*, | ) ) |
| v. | ) ) ) |
| THE UNITED STATES, | ) ) ) |
| *Defendant*. | ) ) ) |

## ORDER

     This case was scheduled for trial in Florida starting May 22, 2023. On May 16, 2023, Plaintiffs "supplemented" their initial disclosures with previously undisclosed sales agreements regarding certain parcels at issue here. Given these documents were responsive to multiple Government discovery requests, the Government complained and the Court postponed the trial. In the months that have followed, more documents have trickled out from the Plaintiffs. And no matter how hard it tried, the Government been unable to get Plaintiffs to properly certify that there were no more responsive documents. Indeed, more documents continued to trickle out. Its motion to compel followed. Because the briefing makes clear that Plaintiffs have yet to properly collect and produce documents in this case, the Court grants the Government's motion to compel.

     Plaintiffs too have moved to compel. They want the Court to order the Government to produce the instructions it provided to its appraiser in *Easey v. United States*, No. 19-716, and his report in that matter. They complain that the Government did not disclose its appraiser's work in *Easey* until after the close of expert discovery and insist that the information from *Easey* is central to this case as well. But under the Court's Rules, the information Plaintiffs seek from *Easey* is still protected from disclosure because the deadline to serve expert reports in *Easey* has not come yet. And Plaintiffs have not provided a sufficient reason for the Court to order the production of documents from *Easey* in this case when the plaintiffs in *Easey* are not yet entitled to the materials. Therefore, the Court denies the Plaintiffs' motion to compel.

**I.    The Government's motion to compel.**

     In its first set of requests for production, the Government asked for "all contracts and agreements between Wynnstay Hunt and D.R. Horton related to the Subject Property." ECF No. 205-1 at 10 (RFP No. 18). And the Government served an interrogatory to "identify every Person who had any legal, equitable or beneficial interest . . . in the Subject Property between

December 5, 2017, and present." *Id*. at 7 (Interrogatory No. 4).  Finally, the Government requested all documents supporting the Plaintiffs' responses to interrogatories.  ECF No. 205-1 at 8 (RFP No. 1).

In response to RFP No. 18, the Plaintiffs referred the Government to documents recorded in title records, previously produced in the claim book process, and/or attached to the complaint or amended complaint.  ECF No. 205-2 at 53.[1]  In response to Interrogatory No. 4, the Plaintiffs did not identify D.R. Horton as having any interest in Parcel B9.[2]  Nothing that Plaintiffs produced were sales agreements to support D.R. Horton's claim of ownership.

That is where this discovery stood until May 16, 2023, which was a mere six days before the trial was scheduled to commence.  On the 16th, the Plaintiffs "supplemented" their initial disclosures with documents, including agreements and closing documents related to the sale of certain of the parcels at issue.  *See* ECF No. 205-3 at 2 ¶ q.  While some of these documents were included in Plaintiffs' appraiser's work papers, none were produced in fact discovery.  According to the Government, these newly produced agreements go to the heart of whether D.R. Horton owned a property interest on the date of the taking.  Given the late disclosure, the Court agreed with the Government that it was necessary to continue the trial.

Then discovery really jumped the rails:

- May 19, 2023 – Government counsel sent an email to Plaintiffs' counsel seeking "confirmation that all documents reflecting the transaction history of the A8/A9 and B9 parcels between Plaintiffs Wynnstay Hunt and D.R. Horton were produced" and stating "[o]ur initial review of the supplemental disclosures Plaintiffs provided on Tuesday appears to indicate that documents related to the May 2018 second closing of the A8/A9 parcels may not have been produced."  ECF No. 205-4 at 1.  Plaintiffs' counsel did not respond.

- June 13, 2023 – Government counsel requested Plaintiffs' counsel to "please confirm that there are no more outstanding documents in Plaintiffs' possession, custody, or control related to the sale of A8, A9, and B9 between Plaintiffs."  ECF No. 205-5 at 3.  Plaintiffs' counsel agreed to confer with Plaintiffs and respond.

---

[1] The Court would be remiss if it did not acknowledge the exceedingly unnecessary briefing that Plaintiffs included in their responses to the Government's discovery requests.  The Government served 10 interrogatories and 18 RFPs, which, when combined, totaled 10 pages.  ECF No. 205-1.  The Plaintiffs served a 54-page response.  ECF No. 205-2.  One might think that Plaintiffs provided extended answers to the Government's discovery.  They did not.  Rather, Plaintiffs filed 36 pages of unsolicited briefing on the questions of: (1) what issues are outstanding in this litigation; (2) the compensation the Government must pay and how to calculate it; and (3) that courts have already decided how to value property in this case.  None of this is appropriate for a response to discovery.  While the Court need not focus on this extraneous briefing now, it will do so if a fee petition comes in this case.

[2] There are several parcels at issue, which are identified as parcels A8, A9, and B9.

2

> *Id*. at 1.  Government counsel also reminded Plaintiffs that they had not responded to the similar request from May 19, 2023.  *Id*.

- June 14, 2023 – Shortly before a status conference, Plaintiffs' counsel sent the Government a letter that did not address whether the Plaintiffs had produced all responsive documents; rather, it requested appraiser work files from other Trails Act litigation.  ECF No. 205-6.  During the status conference, Plaintiffs' counsel committed to confirm by June 15, 2023, that the Government had all documents in their possession.  ECF No. 205-7 at 8:11-14.  Finally, Government's counsel specifically asked for the RCFC 26(g) certification of its document production.  *Id*. at 14:3-6.

- June 20, 2023 – During back-and-forth about scheduling, Plaintiffs' counsel committed to providing a Rule 26(g) certification by Monday, June 26, 2023.  ECF No. 205-8 at 1.

- June 27, 2023 – Government counsel emailed Plaintiffs' counsel because it "did not receive [the] certification yesterday as promised" and would need to seek Court intervention if there were no response by the 28th.  ECF No. 205-10 at 1.  Plaintiffs' counsel raised the issue of their request for discovery from other cases and stated he would provide a "fuller" response later.  *Id*.  Later that evening, Plaintiffs' counsel produced additional documents regarding the sale of Parcel A9 and "confirmed with Wynnstay Hunt that all the responsive and relevant documents in Wynnstay Hunt's possession related to the Wynnstay Hunt-D.R. Horton transaction involving parcels A8, A9, and A10 have been produced."  ECF No. 205-12 at 1.  Plaintiffs also produced additional closing documents on the 27th.  *See* ECF No. 213-1 at 9.

- June 28, 2023 – Government counsel wrote to Plaintiffs' counsel regarding (obvious) shortcomings of the June 27 certification.  ECF No. 205-13 at 2.  First, Plaintiffs' counsel represented only that he conferred with Wynnstay Hunt.  There was nothing about conferring with D.R. Horton.  Second, Plaintiffs' counsel only represented that Wynnstay Hunt had produced everything in its "possession," but said nothing about documents in its custody or control.

The Government's motion followed.  And after the Government filed its motion, the Plaintiffs produced three amendments to the transaction documents.  ECF No. 213-1 at 10.  In their Response, the Plaintiffs assert that they have reviewed the materials that they produced and confirmed that those documents constitute all the relevant documents in their "possession."  ECF No. 213 at 1.  Thus, they certified that they had produced all documents in their "possession, custody, *and* control."  *Id*. at 1-2 (emphasis added).  But the Rules require the certification of the production of documents in a party's "possession, custody, *or* control."  RCFC 26(g) (emphasis added); *see also* ECF No. 218 at 3.  There is, of course, a logical difference between the Plaintiffs' conjunctive formulation ("and") and the RCFC's disjunctive formulation ("or").  Had the Government not been pushing the RCFC 26(g) issue with direct quotes from the Rule since May, the Court may have accepted the certification if the Government had.  But given the repeated discussion of the Rule over two months and Plaintiffs' repeated non-conforming

3

certifications, the Court agrees with the Government that anything short of the exact certification under the Rules is insufficient. And it appears Plaintiffs have more responsive documents yet to be produced.

Prior to argument of this motion, the Court advised the parties to be prepared to discuss whether RCFC 30(b)(6) depositions would be part of appropriate relief if the Court granted the Government's motion. ECF No. 221. In response, each Plaintiff submitted a declaration about their document collection and production efforts. In Wynnstay Hunt's declaration, it states that it provided executed documents to the Plaintiffs' appraiser in 2019. ECF No. 221-1 ¶ 2. Those documents made their way into the appraiser's work files. *Id*. ¶ 3. Nothing explains why these documents were not provided to counsel for production to the Government during fact discovery. The declaration also states that Wynnstay Hunt has produced all executed transaction documents in its "possession." *Id*. ¶ 6. These statements make clear that Wynnstay Hunt has sought only executed transaction documents and has produced only those in its possession. It says nothing about documents in its custody or control, nor about the draft transaction documents the Government seeks. Again, it is wholly unacceptable that these documents were not produced to the Government until the eve of trial in May 2023.

D.R. Horton submitted a similar declaration. This declaration, however, raises even more questions as to what D.R. Horton did to respond to discovery in this case. It appears that the representative from D.R. Horton reviewed the documents that *Wynnstay Hunt* provided to the Plaintiffs' appraiser. ECF No. 221-2 ¶¶ 2-3. Although slightly ambiguous, it appears that D.R. Horton merely reviewed what Wynnstay Hunt produced in this litigation rather than searching its own records. To be clear, if D.R. Horton does not wish to participate in this litigation, it may voluntarily dismiss its complaint. But it may not decline to participate in in this litigation as it appears to have done.[3] Based on its declaration, it does not appear that D.R. Horton searched its own records until the 2023 back-and-forth about the sufficiency of Plaintiffs' document production detailed above, and then only for executed transaction documents. *Id*. ¶ 5. And, like Wynnstay Hunt, D.R. Horton only searched materials in its possession, not those in its custody or control. *Id*. ¶ 6.

These declarations confirm the lack of proper document collection and the failure to provide a proper certification under RCFC 26(g). Both Plaintiffs declared that they searched

---

[3] The Court does not say this lightly. This is not the first time it has come to the Court's attention that D.R. Horton has not fully participated in this litigation. Prior to trial, the Government was having difficulty regarding getting a D.R. Horton witness to testify at trial (D.R. Horton apparently did not intend to call any of its agents or employees to testify). Therefore, the Government was forced to issue a subpoena to compel a D.R. Horton witness to appear, which Plaintiffs' counsel would not accept because D.R. Horton had not authorized him to accept service. ECF No. 186 at 19:21-21:7. The Court was not amused then, *see id*. at 21:8-9 ("Let me make it simple. If they don't show up, they're losing."), and it is not amused now. Further lack of participation in discovery or failure to prosecute this case may well result in the *involuntary* dismissal of D.R. Horton's claim. RCFC 37(b)(2)(A)(v) (authorizing the Court to dismiss the action for failing to comply with Court-ordered discovery); *see also* RCFC 41(b) (allowing the Court to dismiss for failure to prosecute).

only for executed agreements (far narrower than the Government's requests required) and only in documents in their possession. Perhaps this explains why Plaintiffs' counsel would never provide a proper RCFC 26(g) certification—that Plaintiffs had produced all responsive documents in their "possession, custody, or control."

Plaintiffs contend that these documents are not relevant or are privileged. To be sure, the documents the Government seeks are not duplicative or ancillary. Rather, they go to the heart of one of the issues before the Court—whether D.R. Horton owned a property interest in one of the subject parcels on the date of the taking. Of course, if D.R. Horton did not own a property interest in any of the subject parcels on the date of the taking, it would lack standing to seek compensation. *E.g.*, *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1000 (1984); *cf. Preseault v. United States*, 100 F.3d 1525, 1533 (Fed. Cir. 1996) (recognizing that if the railroad obtained a fee simple interest, "the Preseaults today would have no right or interest in those parcels and could have no claim related to those parcels for a taking.").

Plaintiffs' arguments that the draft transaction documents are not relevant are unavailing. First, Plaintiffs insist that these documents are not necessary because "[t]he only outstanding issue is the amount of money the government must pay for the private property the government took from Wynnstay Hunt and D.R. Horton." ECF No. 213 at 3. Here Plaintiffs point to Joint Title Stipulations in this case as establishing that both Wynnstay Hunt and D.R. Horton owned the parcels at issue. *Id*. at 3 n.4. But the stipulations make no such concession as to D.R. Horton. To the contrary, the Joint Stipulations identify the issue of whether D.R. Horton owned the property on the date of the taking as "Disputed." ECF No. 21 at 3. In other words, the stipulations render Plaintiffs' argument frivolous rather than support it. Given the documents the Government seeks (transaction documents regarding the sale of a subject parcel) go to the heart of the ownership issue, the notion they are irrelevant is nonsensical.

Second, Plaintiffs rely on an out-of-context statement in a prior decision to argue that this Court has "held" that both Wynnstay Hunt and D.R. Horton owned property taken by the Government. ECF No. 213 at 3 n.4. Not so. In 2020, the Government moved to stay this case pending the resolution of a class action in Florida against the trail sponsor, Sarasota County, Florida. In deciding whether this case and the Florida litigation were independent, the Court considered whether this case was more like *Freeman v. United States*, 83 Fed. Cl. 530 (2008), in which the existence of property rights required resolution of a dispute in another case and justified staying the case here, or *Cherokee Nation*, 124 F.3d 1413 (Fed. Cir. 1997), where the outcome of the other matter was not necessary to determine the property rights of plaintiff here and negated the need for a stay. The Court denied the motion, *inter alia*, because there is not a dispute as to whether compensable property interests exist in this case. As Judge Wheeler wrote, "[s]ince the Government has already stipulated to liability, it is clear that property rights do exist." ECF No. 100 at 7. Of course, Judge Wheeler was simply recognizing that the Government stipulated that the asserted property right (fee simple ownership unencumbered by the railway easement) clearly existed because the Government had stipulated to it for all the Plaintiffs other than D.R. Horton. That is *not* a holding that all Plaintiffs held those rights on the date of the taking (an issue not before Judge Wheeler at the time), nor does it undermine the fact that the Government disputed that D.R. Horton owned the property it claims on the date of the taking.

Plaintiffs' arguments about the relevance of the documents the Government seeks are not only unavailing, but they also fall well short of the candor this Court expects of its bar under RCFC 11.  Given that the Court must award costs to the Government under RCFC 37 for its successful discovery motion, coupled with its desire to get this case back on track, the Court will not separately address the candor issue.  That said, the Court hopes the preceding discussion disabuses counsel of the mistaken impression that this Court does not check the citations they make in support of their arguments.  And to be clear, future representations like the ones discussed above will result in an order to show cause why the Court should not impose sanctions.

Finally, Plaintiffs contend that draft transaction documents are necessarily privileged because they are either communications between Wynnstay Hunt and its counsel or D.R. Horton and its counsel.  ECF No. 213 at 2 n.1.  This argument also lacks merit.  First, as Plaintiffs made clear above, they never searched for these documents nor provided them to counsel.  It is simply impossible for counsel to assert privilege over documents they have never seen.  Second, there are certainly unexecuted drafts of transaction documents that are not privileged.  As one example, when counsel for D.R. Horton sent drafts to counsel for Wynnstay Hunt, or vice versa, no privilege possibly applied.  Third, not every draft is necessarily covered by the attorney-client privilege either.  In fact, WynnStay Hunt has already produced a "red-line closing statement" to the Government, demonstrating that Plaintiffs do not actually believe that all draft documents are privileged.  ECF No. 222-1 at 2 ¶ 5.

It is Plaintiffs' burden to demonstrate that the privilege applies to specific documents they have in their possession, custody, *or* control, and to list those documents in a privilege log.  *AAB Joint Venture v. United States*, 75 Fed. Cl. 448, 456 (2007); see also RCFC 26(b)(5)(A) (stating the proper way to assert privilege is to "expressly make the claim").  Plaintiffs' merely stating that all draft documents are privileged after producing some draft transaction documents "does not satisfy [their] burden."  *AAB Joint Venture v. United States*, 75 Fed. Cl. 448, 456 (2007).  While the Court could consider Plaintiffs to have waived privilege through their failure to properly assert it, the Court will allow them one chance to remedy their late claim as they finalize document collection and production as detailed below.

At this point, the only way the Court sees to get this case back on track is to grant the Government's motion to compel and order RCFC 30(b)(6) depositions to figure out what additional responsive documents exist so the Plaintiffs may produce them and properly certify their productions.

## II.     Plaintiffs' motion to compel

Plaintiffs also complain of the Government's refusal to produce certain materials that the Government's appraiser, Mr. Starkey, prepared during his work in *Easey v. United States*, No. 19-716.  This is not the first time the Plaintiffs have sought this information.  They previously moved to compel the Government to produce the report from *Easey* and similar materials from Mr. Starkey's work on *Collective Edge, LLC v. United States*, Nos. 20-34, 20-48, and 20-159.  ECF No. 188.  Plaintiffs also sought to preclude the Government from presenting any testimony from Mr. Starkey due to alleged failures to disclose certain work that Mr. Starkey had done on other rails-to-trails litigation for the Government.  ECF No. 184.  The Plaintiffs withdrew these motions when it became clear the Court would not be able to resolve them prior to trial, which

was scheduled to start roughly two weeks after the Plaintiffs filed their motions.  *See* ECF No. 189.  Once the Court postponed the trial, the Plaintiffs filed the pending motion to compel Mr. Starkey's report and materials from *Easey*.

As part of their expert discovery, Plaintiffs requested the Government produce all of Mr. Starkey's prior appraisal reports and communications with the Government regarding Mr. Starkey's compensation and assumptions the Government provided to Mr. Starkey.  *See* ECF No. 206-1 at 9-10 (RFP Nos. 1-3).  According to Plaintiffs, the Government did not object to producing Mr. Starkey's prior appraisal reports.  ECF No. 206 at 2.  This is quite difficult to reconcile with the Government's response, which states:

> Defendant *objects* to this request as vague, ambiguous, overbroad, unduly burdensome, and not proportional to the needs of the case. Defendant further *objects* to this request because it seeks irrelevant documents not considered or relied on by Mr. Starkey in drafting his Appraisal Reports.  Defendant further *objects* because it is not properly limited in scope to the property owned by D.R. Horton at the time of the NITU and the property owned by Wynnstay Hunt at the time of the NITU that are at issue in this litigation and that are the subject of Mr. Starkey's Appraisal Reports.

ECF No. 206-2 at 4-5 (emphasis added).  While Plaintiffs dismiss these objections as "boilerplate," the Court is not persuaded.  The objections explain why they Government thinks the specific documents requested are irrelevant and beyond the scope of appropriate discovery. Suffice it to say, the Government objected and now the Plaintiffs move to compel.

Plaintiffs make much of the fact that they first learned of Mr. Starkey's work on *Easey* after his deposition on May 2, 2023.  *E.g.*, ECF No. 206 at 2.  At the time of his expert disclosures in this case on March 3, 2023, *see* ECF No. 186 at 5:9-11, Mr. Starkey did not list *Easey* as another case in which he had provided testimony.  This was wholly accurate because the Government did not retain Mr. Starkey to work on *Easey* until May 1, 2023.  Case No. 19-716, ECF No. 53 at 2.

During his deposition on May 2, 2023, Mr. Starkey testified that the only other case he had been involved with was *Collective Edge*.  *See* ECF No. 206-3 at 52:16-19.  Plaintiffs thus complain that "Mr. Starkey's work in *Collective Edge* had not previously been disclosed."  ECF No. 206 at 2.  True.  At the time of the expert disclosure in this case, which require the identification of cases in which the witness testified, RCFC 26(a)(2), Mr. Starkey had not yet testified in *Collective Edge*.  ECF No. 186 at 5:10-11.  Thus, the expert disclosure was accurate when made.  But the Government should have updated its disclosure.  RCFC 26(e).  While this Court does not lightly excuse the Government's failure to update its expert disclosure, the noncompliance in this case is not worthy of sanction because Plaintiffs' expert, Mr. Durrance, also provided a report and testimony in *Collective Edge*.  ECF No. 186 at 5:18-6:3.  And, like the Government, Plaintiffs failed to update their expert disclosures in this case to include Mr. Durrance's work on *Collective Edge*.  *Id*.  Given their identical failure, the Court will not fault the Government for failing to update its expert disclosures because "[a]fter all, in the law, what is

7

sauce for the goose is normally sauce for the gander." *Heffernan v. City of Paterson, N.J.*, 578 U.S. 266, 272 (2016).

Similarly, Plaintiffs complain that they did not learn of Mr. Starkey's work on *Easey* until after his deposition. Again, the Government first gave Mr. Starkey a verbal authorization to begin work on *Easey* on May 1, 2023. Case No. 19-716, ECF No. 53 at 2. That was the day before his deposition. *See* ECF No. 206-3 at 1 (deposition transcript listing May 2, 2023, as the date of the deposition). Thus, when Plaintiffs' counsel asked Mr. Starkey what other rails-to-trails cases he "had" (in the past tense), it is unsurprising that Mr. Starkey did not identify *Easey* as a case he had done work on. Therefore, the Court does not find that Mr. Starkey or the Government somehow hid his work on *Easey*.

In the end, the resolution of whether to compel the production of the Government's instructions to Mr. Starkey and his report in *Easey* is, well, easy. Mr. Starkey's report is not yet due in *Easey*. Case No. 19-716, ECF No. 64. And under RCFC 26, any instructions the Government provided to Mr. Starkey in *Easey* are not discoverable yet either (they will be included in the report). The Rules clearly provide that the draft expert reports are privileged and not discoverable. According to RCFC 26(b)(4), "RCFC 26(b)(3)(A) and (B) protect drafts of any report or disclosure required under RCFC 26(a)(2), regardless of the form in which the draft is recorded." Because Plaintiffs have failed to provide any reason to invade this protection, the Court declines to order the premature disclosure in this case of Mr. Starkey's report regarding the property in *Easey*.

## CONCLUSION

For the foregoing reasons, the Court:

1. GRANTS the Government's motion to compel, ECF No. 205;

2. ORDERS each Plaintiff to prepare and make available a witness for an RCFC 30(b)(6) deposition (one deposition for each Plaintiff). During these depositions, the Government may inquire regarding Plaintiffs' document collection efforts; documents they have in their possession, custody, *or* control; and/or any transaction between Wynnstay Hunt and D.R. Horton regarding any property at issue in this litigation. Following these depositions, the Parties shall confer and use their best efforts to agree on a path forward to finalize document discovery so that Plaintiffs may produce all responsive documents provide a proper RCFC 26 certification of their productions. If the Plaintiffs believe that any responsive documents are protected by privilege, they must properly assert the privilege and serve a privilege log;[4]

3. AWARDS the Government "reasonable expenses incurred in making the motion, including attorney's fees." RCFC 37(a)(5)(A). The Government shall prepare a statement of

---

[4] The Court does not order additional deposition time with the Plaintiffs' expert regarding belatedly produced documents only because the Government has not asked for such relief. If the discovery the Court orders leads the Government to conclude that additional deposition time with the Plaintiffs' expert is necessary, the Court will almost certainly accommodate such a request.

reasonable expenses and meet and confer with Plaintiffs' counsel.  If there is a dispute between the Parties as to the reasonableness of the Government's claimed expenses, the Government shall file a motion with the Court; and

    4. DENIES the Plaintiffs' motion to compel, ECF No. 206.

IT IS SO ORDERED.

                                                          <u>s/ Edward H. Meyers</u>
                                                          Edward H. Meyers
                                                          Judge