# In the United States Court of Federal Claims

No. 18-111 L
Filed: January 31, 2025

|   |   |
|---|---|
| CHESHIRE HUNT, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| THE UNITED STATES, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

**MEYERS, Judge**.

     In litigation, discovery often leads to disputes. This case is no different. And like most discovery disputes, there was no need for this kerfuffle. It is with this realization in mind that the court takes this opportunity to offer a humble suggestion to these parties and others—confer meaningfully with each other. This court's rules are riddled with provisions that encourage—if not require—parties to confer with each other regarding discovery matters. *E.g.*, RCFC 16, 26, 29, 37, & App'x A ¶¶ 3, 4, 5, 10. If Plaintiffs thought discovery was overly burdensome or overbroad, they could have discussed these issues with the Government. And if the Government thought there were specific documents that Plaintiffs were not producing, it could have asked for them specifically. During these discussions the parties could have easily reached agreements balancing the need for documents against the burden of discovery. But unilaterally withholding documents until the eve of trial and beyond is no way to run a railroad, so to speak.

**I.     Background**

     Within a week of when this case was scheduled to go to trial, Plaintiffs[1] produced to the Government a trove of documents that had not been produced during fact discovery.[2] Some of

---

[1] All the plaintiffs other than Wynnstay Hunt and D.R. Horton have settled their claims in this case. The court uses "Plaintiffs" to refer only to these two remaining plaintiffs.

[2] During a conference held immediately following the belated production of these documents, Plaintiffs asserted that they were confident the documents had been produced during discovery, but their paralegal was en route to the trial site and unreachable to compile the records of production. They stated such documentation would be forthcoming. ECF No. 199 at 13:7-15:2. Because the court has not received any substantiation that the documents had been produced

them appear not to have been produced during expert discovery either. Several of them go to the heart of this dispute. These late disclosures derailed the trial, which has yet to be rescheduled.

For months after the aborted trial, the Government sought, without success, to get Plaintiffs to produce any additional responsive documents they had and/or properly certify that they had produced all responsive documents. Each party filed a motion to compel. The court granted the Government's motion to compel and denied the Plaintiffs' motion to compel. ECF No. 224. In that Order, the court chronicled the unfortunate path discovery had taken in this case, including the Government's numerous unsuccessful attempts to get Plaintiffs to properly certify that they had produced all responsive documents in their possession, custody, or control. *Id*. at 2-3. The court also addressed the Plaintiffs' failures to comply with their discovery obligations.

This failure came into focus when Plaintiffs submitted declarations in response to the court's concern that the parties did not appear to have a solid grasp on what documents Plaintiffs had. *See* ECF No. 221 (pre-hearing order directing the parties to address whether Rule 30(b)(6) depositions regarding document collection would be appropriate if the court were to grant the Government's motion to compel). In its declaration, Wynnstay Hunt explained that it searched for executed versions of the sale contracts in its possession. ECF No. 224 at 4; *see also* ECF No. 222-1 ¶¶ 2, 6. This declaration also stated that these documents were given to the Plaintiffs' appraiser but failed to explain why they were not produced to the Government during fact discovery. D.R. Horton's declaration indicated that it simply looked at what Wynnstay Hunt produced rather than searching its own records. ECF No. 224 at 4; *see also* ECF No. 221-2 ¶¶ 2-3. Neither Plaintiff searched for anything other than executed contracts nor anything beyond its possession (*e.g.*, anything within its custody or control as RCFC 26 requires). As a result, the court ordered each Plaintiff to sit for a RCFC 30(b)(6) deposition regarding their document collection efforts, what documents they have, and the transaction between them regarding the property at issue in this action.

Having granted the Government's motion to compel and believing that Plaintiffs had addressed their purported substantial justification for withholding documents in their briefing, the court also ordered the Government to provide a statement of its reasonable expenses and confer with Plaintiffs to try and agree on an appropriate amount under RCFC 37(a)(5)(A). The parties were unable to reach an agreement, so the Government has filed a motion for its reasonable expenses incurred in bringing the motion to compel. ECF No. 228.[3] Plaintiffs oppose the motion and ask the court to reconsider its award of expenses under Rule 37. ECF No. 233.

---

before the eve of trial, coupled with the fact that the documents were given Bates Numbers indicating their production after all prior productions, the court concludes that Plaintiffs never produced these documents prior to the eve of trial.

[3] The Government initially filed its motion, *see* ECF No. 227, and quickly filed a corrected version, ECF No. 228. Given the corrected version of the motion, the court denies the original motion, ECF No. 227, as moot.

**II.     Plaintiffs' Motion to Reconsider**

When seeking reconsideration under Rule 59, the movant must "demonstrate[] that: '(1) there has been an intervening change in controlling law; (2) previously unavailable evidence has been discovered; or (3) reconsideration is necessary to prevent manifest injustice.'" *Maehr v. United States*, 767 F. App'x 914, 916 (Fed. Cir. 2019) (quoting *Heritage of Am. v. United States*, 77 Fed. Cl. 81, 82 (2007)). In this context, a "manifest injustice" is an "injustice that is apparent to the point of almost being indisputable." *Lone Star Indus., Inc. v. United States*, 111 Fed. Cl. 257, 259 (2013). But motions for reconsideration do not "give an 'unhappy litigant an additional chance to sway' the court." *Matthews v. United States*, 73 Fed. Cl. 524, 525 (2006) (quoting *Froudi v. United States*, 22 Cl. Ct. 290, 300 (1991)). Put another way, a motion to reconsider is not a proper vehicle to relitigate issues that the court already decided. *Dairyland Power Coop. v. United States*, 106 Fed. Cl. 102, 104 (2012).

Plaintiffs contend that the court ordered them to pay without giving them the opportunity to be heard in violation of RCFC 37(a)(5)(A), presumably a claim of manifest injustice. ECF No. 11 n.3. Although Plaintiffs appeared to assert their substantial justification for withholding documents in response to the Government's motion, *see* ECF No. 213 at 1-3 & n.1, the court did not intend to preclude them from making any arguments that they wish to justify their withholding documents. Thus, the court grants reconsideration to ensure that Plaintiffs may raise any argument (in many cases, again) to support their claim of substantial justification. In other words, the court grants reconsideration insofar as it ensures that Plaintiffs can make every argument they wish regarding substantial justification.

**A.     Substantial Justification**

In the Rule 37 context, "a legal position is substantially justified if there is a genuine dispute as to proper resolution or if a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact." *Marine Indus. Constr., LLC v. United States*, No. 15-1189, 2018 WL 6650359, at *4 (Fed. Cl. Dec. 17, 2018) (cleaned up) (citations omitted). According to Plaintiffs, they "earnestly and reasonably believed that unexecuted draft contract documents were not relevant to the issues in this case [and they] were not encompassed in the government's document requests." ECF No. 233 at 5. Neither argument has merit.

To the extent Plaintiffs argue they were substantially justified in withholding all draft contracts in this litigation because only the executed versions could convey title and the ownership of the property is the issue before the court, the argument fails. As an initial matter, this is a strawman argument. The discovery dispute in this case has never been limited to the withholding of unexecuted drafts of contracts. Those draft documents were but one example of documents that Plaintiffs had neither searched nor produced despite recognizing that they were responsive to the Government's discovery requests. If Plaintiffs were seeking an opportune time to discuss the Government's need for these documents, that was during fact discovery—not long after expert discovery had concluded and the trial derailed. And courts have long held that "relevant" discovery is far broader than this. Indeed, parties often learn a lot about a contract by reviewing the various versions that the parties shared along the way of their negotiations.

Plaintiffs fair no better in their argument that they were substantially justified in withholding unexecuted contracts because they did not fall within the purview of the Government's discovery requests. ECF No. 233 at 12-13. The Government's discovery requests in this case defined the term document to "include 'all drafts of a document and all copies that differ in any respect from the original, including any notation[,] underlining, marking, or information not on the original.'" ECF No. 236 at 13 (quoting ECF No. 205-1). Drafts were surely included within the purview of the requests.

But even if the court accepted the Plaintiffs' arguments regarding the withholding of unexecuted versions of contracts, that would not show substantial justification. Plaintiffs withheld far more than just unexecuted versions of contracts. In fact, Plaintiffs were still producing, and in one case refusing to produce, *executed* versions of contracts as well as other documents regarding the sale of the parcels at issue in this case well into the briefing of the fee petition:

- On June 14, 2023, Plaintiffs assured the court and the Government that they would confirm by June 15 that the Government had every relevant document. ECF No. 202 at 8:11-14.

- On June 27, 2023, Plaintiffs produced a closing statement and amended closing statement for Parcel A9, but no similar documents for Parcel A8. ECF No. 236 at 7.

- On August 1, 2023, along with their response to the Government's motion to compel, Plaintiffs produced additional executed amendments to the Parcel B9 sales agreement. *Id*. at 7-8. And in their response, Plaintiffs assured the Government and the court that they had searched all records in their possession and produced every relevant and responsive document. ECF No. 213 at 1-2.

- The court granted the Government's motion to compel on September 22, 2023. ECF No. 224.

- On November 22, 2023, Plaintiffs served over 170 more documents, including the closing statement regarding Parcel A8. ECF No. 236 at 9.[4]

Then, while the parties were briefing the motion for reconsideration, the Government filed another motion to compel seeking the production of the executed version of an agreement incorporated into a sales contract at issue in this case. ECF No. 235. In response, Plaintiffs argued there was no need to produce this document because they did not believe it to be relevant (despite being incorporated into the sales agreement), ECF No. 237 at 1, and noted that they had already produced a *draft* of the agreement, *id*. at 1-2. Thus, on one hand, Plaintiffs were saying

---

[4] Plaintiffs fail to explain why these documents were not produced during fact or expert discovery, nor why their prior searches in July and August 2023 did not locate them. It is hard to understand how Plaintiffs could assure the court that they had searched their files and produced everything by August, only to produce 170 more documents (including documents involving the sale of parcels at issue) in November.

4

that they were substantially justified in withholding unexecuted contract documents because only the executed versions mattered. On the other hand, Plaintiffs were arguing that they did not have to produce the executed version of a contract that was incorporated into the sale agreement because Plaintiffs had the unexecuted version. To recite the argument is to reject it.

As should be clear by now, the court was not sanctioning Plaintiffs merely for failing to produce draft contracts shared between the parties. As the court explained in its order, the problem was that Plaintiffs had failed to engage in meaningful discovery in this case and the draft agreements were just an exemplar of that failure. And the Government's motion appears to be the only reason Plaintiffs produced yet more *executed* versions of contract documents that Plaintiffs previously (and inexplicably) had not produced, despite repeatedly attempting to certify that they had no further responsive documents to produce. There can be no valid basis to assert that executed versions of contract documents regarding the sale of the parcels at issue in this case were properly withheld.

Nor can there be any argument that these late-produced documents are not clearly responsive and very relevant to this case given that several of these documents are playing a prominent role in pending cross-motions for summary judgment. According to the parties, a major issue driving the delta between the Government's appraisal of the Plaintiffs' property and the Plaintiffs' higher appraisal of their property is whether the parcels should be appraised as one unit or as separate parcels. *See generally* ECF Nos. 243, 246, 249, 250. Of course, the proper appraisal is a question for the merits, not discovery. For today's purposes, however, the fact that Plaintiffs withheld these documents until the eve of trial and beyond is the problem.

For these reasons, the court concludes, as it had before, that Rule 37 sanctions are appropriate in this case.

### III.    The Government's Motion for Expenses Incurred Bringing its Rule 37 Motion

Just because the court has concluded that Plaintiffs were not substantially justified in withholding documents, that does not mean that the court will award all the costs the Government seeks. There remain questions as to what the Government's reasonable costs are. The briefing on these issues convinces the court that resolution at this stage is not appropriate.

Much of the briefing concerns the hourly rate that should apply to the Government's time. According to the Government, the proper hourly rate comes from the Fitzpatrick Matrix because this matrix most accurately reflects the prevailing rate in complex litigation. ECF No. 228 at 6-7. This method results in hourly rates ranging from $553-$782 per hour. *Id*. at 8. Not surprisingly, Plaintiffs believe that the Government should not be allowed to recover more than $133-$134 per hour. ECF No. 233 at 18-20. The court is not satisfied that either party has provided a persuasive argument for their wildly disparate view of what reasonable fees will be. The court does not agree (at this stage) that this is complex litigation. Nor does the court believe that $134 per hour is remotely close to an appropriate hourly rate.

But the court need not resolve this now. Following the resolution of this case on the merits, Plaintiffs intend to seek fees under the Uniform Relocation Act ("URA"), which will allow them to recover reasonable attorney's fees for their time. The court will be stunned if

Plaintiffs consider $134 per hour to be the appropriate hourly rate for *their* time. It is certainly not an appropriate measure of the Government's time. And when it comes to calculating the reasonable hourly rate for attorneys working on this matter, the court will apply the age-old goose and gander rule. *E.g.*, *Heffernan v. City of Paterson*, 578 U.S. 266, 272 (2016) ("After all, in the law, what is sauce for the goose is normally sauce for the gander."). In other words, the court will apply the same *methodology* for calculating the proper hourly rates for the Government attorneys as it does for the Plaintiffs' attorneys. To be sure, the hourly rates themselves may not be the same, but the methodology for determining them will be. And given that both parties will have an incentive to both increase and decrease the reasonable hourly rates, the court expects that they will come to an agreement on the proper methodology that is, in fact, reasonable.

## IV. Conclusion

For the forgoing reasons, the court:

1. Denies as moot the Government's motion for attorney's fees, ECF No. 227;

2. Denies the Government's corrected motion for attorney's fees, ECF No. 228, without prejudice to refiling as discussed above; and

3. Grants-in-part and denies-in-part Plaintiffs' motion for reconsideration, ECF No. 233.

It is so ORDERED.

s/ Edward H. Meyers
Edward H. Meyers
Judge
